UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                                                                 :

UNITED STATES OF AMERICA,          :
                                   Plaintiff,   :
                                                 :         19 Cr. 873 (LGS)
               -against-                    :
                                                 :            ORDER
ESAAHN HOUGH,                              :
                                  Defendant,  :
-------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       WHEREAS on April 5, 2021, the Court received the attached letter from Defendant. It is hereby

       **ORDERED** that the Government shall file a response to this letter by **April 13, 2021**.

Dated: April 6, 2021
       New York, New York

                                                                           LORNA G. SCHOFIELD
                                                           UNITED STATES DISTRICT JUDGE

TRULINCS  87562054 - HOUGH, ESAAHN - Unit: BRO-I-B

---

To: Honorable, Lorna.G.Schofield

It is imperative to make to your knowledge, the magnitude of this cruel and inhumane detention we are enduring in the prisons of the B.O.P. Taking advantage of a natural health crisis and implementing "supposed" preventive measures to prevent the contagion of Covid-19. The inmates are subjected to inhumane treatment, and our rights are constantly being violated, being locked in our living quarters for days without the proper space to do sport activities, exercise, and even receive visits from our loved ones.

Since March 16th, 2020, that this quarantine was put into effect we stripped of way to the educational library (as well as the Law Library) which makes it very difficult for us to defend ourselves.. Also stripped from religious activities. We are placed in a regime designed for a special housing unit consisting of disciplinary punishment without an actual disciplinary report.

Since April,2020, The Metropolitan Detention Center (MDC) Brooklyn decided that we should remain confined in our cells, From then schedules have went from 30 minutes out of cell 3 times a week Monday, Wednesday, and Fridays, to one hour out of our cells 3 times a week, Monday, Wednesday, and Fridays ,then changed to 1 hour Monday through Friday, then changed again to 3 hours days a week, now we are back to just 30 minutes out of our cell, where we must shower ,use the phone and email our families all within that 30 minute time frame. Mainline or our counselor and case manager has not been making there weekly visits to the housing units in approximately four months.

They are simply taking extreme "Non Punitive" measures by making this situation increasingly stressful by limiting recreational activities and time allowance, emotionally and physically we are affected.  Most inmates are suffering from depression due to these measures, and at most time panic for fear of catching this deadly virus.

The B.O.P. has already demonstrated negligence and disinterest in the mental and social health of inmates, which could trigger traumatic injuries (his being in contrary to USC art 3553) which is unacceptable, because the given duty of the B.O.P. is to ensure adequate protection of prisoners as long as they remain in their custody and protection in light of the law (18 USC 40.42 [a,2,3]).

Under New York law, a claim of negligent infliction of emotional distress must be premised upon a breach of duty owed "which endangers unreasonably the plaintiff's physical safety" (see Sheila C.V Povish 11AD 3D, 120, 130 First Dept. 2004). "A plaintiff may establish a claim of negligent infliction of emotional distress in one of two ways 1.  The Bustander theory or 2. The Direct Duty theory" (Quoting Martise v. United States 103 F3D 696, 696 2D 1996).

"A plaintiff may recover for emotional injury under the direct duty theory, when He/She suffers an emotional injury from defendants breach of duty which unreasonably endangers his/her own physical safety" (Martise 103 F3D at 696 citing Kenney v Mc kesson Co 58 New York 2d cir 500, 504 1983).  "The duty is such cases must be to the plaintiff and not som amorphous free -floating to society" (ID citing Johnson vs. Jamaica Hospital 65 NY ad 523, 526-527 1984).

As we see in previous and following examples, different district courts have considered the condition of inmates to be severe and inhumane, especially in inmates awaiting sentencing.  In such cases as [US v Mendola 03, CR (449) in front of The Honorable Judge Kimba Wood] Honorable Kimba Wood took into consideration in Mendola's severe seclusion in the Metropolitan Correction Center (MCC), [also see US v. Mateo 229 supp 2nd 201, 212 SDNY 2004, see also US v. Hernandez-Santiago 92 F3D 97 101 N2 2D 819-96].

In cases such as Koon v. US 116 S. Ct 2035, 1996 or US v. Britton 96-50 172 C.d cal 139 (f) 3d (718), and United States v. Sutton (972) f supp 488 DNJ 1997 made reason for deviation for the horrific conditions of lower quality pretrial detention centers.  Resulting in downward deviation under USSG, 5K20 for the kind of unsuitable circumstances taken into consideration and derived from the authority granted to district courts by the Supreme Court of the United States.

Other courts address this issue and in the other circuits take more part by agreeing these and many more aspects are permissible points for the decensive deviation of the USSC's.  The Honorable Judge Spatt acknowledged poor conditions at the Nassau County Correctional Center (NCCC) warrant consideration and applied a deflection descending in the range of guidelines (see US v. Elvis Francis NIJY February 2/2011 page 25 column 1) (also see US V. Avila Brianza 704, 8 EDNY). In Britton v. United States the court quote the following as extraordinary cruel and unusual conditions.

1. Antihygenic Environment
2.  Inadequate portions of food
3. Overcrowding

TRULINCS  87562054 - HOUGH, ESAAHN - Unit: BRO-I-B

---

4. Excessive Confinement in cells
5. Inadequate access to law library
6. Violent conditions
7. No fresh air circulation
8. Limited recreation and facilities
9. Limited Commissary
10. Poor medical care
11. Limited privacy in shower and toilets
12. Limited commissioner

In 2019 MDC Brooklyn experienced a blackout where inmates were affect more than a week, forced to live in cruel inhumane conditions that resulted in a civil rights claiming on behalf of the inmates (see Vease Scoot v. Quay 19 C.V. 1075 (JB) 8mjb EDNY). The eastern district judge recognized the severity of the harsh living conditions during the blackout, hence Honorable Judge Jesse M Furman granting Mr. Ozols credit at sentencing, stating "the conditions on which I read are the conditions that one associates with a third world country, not a country like this, and NO detainee whether convicted or not, pending sentence should have to endure as the detainees at MDC have endured." (Quoting Ozols v. United States 16 CR.692 (JMF) ECF No. 234 En 30-20 31:14).

The time we are living in the cells quarantined per pandemic, is inhumane and very difficult to cope with, and very much punitive. In the beginning many of understood the precautions of the national policy of "stay at home" as the whole country was subjected to, 10 months and counting as the world now opens up, we consider that the B.O.P. takes less severe measures. Their rules (or measures) are locking us in a cell that is NOT individual, 30 minutes a day out of cells for 5 days a week, in abundance of 8 cells (16 inmates who all have to use 4 phones at a total of 15 minutes each) at a time, where we have to shower, email, call home or attorney and sanitize our cells, it is nearly impossible.

Saturdays and Sundays when most of our loved ones are available or off their work schedule, we are locking in our cell for 24 hours. A total of 2 hours and 30 minutes for the week out of our cells, where as in the SHU (Special Housing Unit) they get an hour a day Monday through Friday, a total of 5 hours a week out of their cells. We are being told to eat in our cells (logically at our desk) a foot and a half away from our toilet (4-5 feet away in SHU). We are only being afforded a limit of $50 purchase at commissary bi-weekly, reducing a NON-punitive normal limit by nearly 300%.

In different housing Units throughout the facility, dozens of inmates have tested positive for COVID-19 recently, some as close as the next unit with officers still mingling back and forth, to and from. These actions may seem unintentional or unpreventable but it increases the risk of contagion.

Many officers on duty adhere to strict but not very logical no effective policies of the Lieutenant (or Captain on post) to only let 2 orderlies out of their cells, may it be kitchen workers. shower sanitizers, or even phone and computer wipers. At most the showers are expected to be disinfected after EACH use, but orderlies are less frequent to come out and do their duties. Phones and computers are used as much often, if not more. How can we sanitize a unit with only 2 people? These are questions raised by even some officers on post.

It is true that our minutes on the phone have increased and are now implemented free but that benefit is seen seldom when as previously noted, we are only afforded 2 and a half hours a week (a total of 10 hours a month) with no weekend afforded to the population. Also not taken into account factors are inmates in transit who have been stuck here at MDC Brooklyn through the pandemic. Different time zones play a big part in many frustrations whether it be working hours or middle of the night hour for inmates whose recreations starts at 7am.

In no possible way can we downplay the way this virus has shaken our country. We understand the measures being taken, however it is inhumane for this rigorous confinement, as reported in the newsletter dated April 15th 2020 the daily food portions have been significantly reduced and limited.

Suspension of legal visits in attempt to reduce risk of spreading the virus by exposure to outsiders has limited us access or great delays in information from our cases to the law library if we even are afforded time at all. It also strips us of the strategies to be raised in our defense making it very difficult to agree to arguments with our lawyers to raise or prepare proper defenses.

With these matters and issues at hand, although they're viewed as protective measures. Does NOT justify cruel and unusual conditions that we are receiving in MDC Brooklyn per order of the B.O.P. It is punitive and inhumane, violating civil rights and guarantees of this country's constitution such as our country's eight and fourteenth amendments. Experts in crisis and psychological and social consequences of interpersonal relationships, depression, stress and anxiety an obvious reverse goal

1) Unconstitutional Inhumane Conditions: (Cruel and unusual punishment for Pre-Trial inmates) Violation of 8th amendment.. and the (Due process clause) Violation of 5th, and 14th Amendment ...

2) Housing: To the extinct practicable, Pre-trial detainees must not be housed with those who are convicted of crimes.. detainees must be housed apart from convicts, Thus, the act constitutes permissible regulation rather than impermissible punishment ( Due process clause pp.2101-2102)

3) At a Minimum Pre-trial detainees must be provided daily with one hour of outside recreation(weather permitting) or two hours of indoor recreation.. (https//www.Bop.Gov/policy/progStat/7331_004. PDF

Due to information provided above, and all information already submitted to attorney Jeffrey Chabrowe by defendant, Esaahn Hough, as Well as many other Factors that attorney is aware of, The defendants mandatory minimum guidelines should be waived or substantial amount of credit should be given to defendant at or before sentencing..

Extraordinary and Compelling Reasons; Warranting sentence reductions..

Respectfully submitted By;
Esaahn Hough

*[signature]*

TRULINCS 87562054 - HOUGH, ESAAHN - Unit: BRO-I-B

------------------------------------------------------------------------------------

FROM: 87562054
TO: AW Programs
SUBJECT: ***Request to Staff*** HOUGH, ESAAHN, Reg# 87562054, BRO-I-B
DATE: 02/26/2021 06:45:33 PM

To: WARDEN) H.TELLEZ
Inmate Work Assignment: part 1

I Esaahn Hough,is requesting "2 for 1" days harsh time credit for when i go to get sentenced for pain and suffering I went through and still is going through since "march 2020"

"Constant lockdowns" and other unusually severe conditions of confinement necessary to reduce the risk of Covid-19 infection in the close quarters of a prison make the conditions of confinement,harsher,both psychologically and physically than they would otherwise normally be". Us vs Henareh= F.supp.3D-No.11-cr-93-1(JSR)ECF No.153 at 13,2021 U.S.dist. Lexis6855 (S.D.N.Y) jan 13,2021)

I have been on constant lockdowns for 21+ hours daily since the beginning of the pandemic sometimes being locked in for 24hours daily for many days ina row,which has caused a tremendous amount of stress on me,physically,mentally,as well as emotionally.

the lockdowns has caused me serious harm to my alleged crime,by not having adequate time to do law work on the law cpu,and building a proper defense for my allege crime which will affect the outcome of my case, as judge Nathan stated in Us v dante stephens no 15 cr 95 2020 u.s dist lexis 47846,2020 wl 1295155 at 2* (S.D.N.Y. mar 19 2020) "the current conditions" in the BOP in particular ,the suspension of legal visits to curb the spread of Covid-19 would adversely affect defendants ability to prepare his defense.

i havent seen my family or my attorney for some time due to the facility being on lockdowns, which is affecting me mentally ,emotionally and legally.

Ever since the pandemic has started the emergency button located in my living quarters stopped working,I find that harsh and well as cruel and unusual punishment, because it was no longer activated exactly a week after the pandemic had started, the button is used for emergency/safety and medical issues that may occur while being in you your living quarters, I feel it was intentionally deactivated to prevent staff from having to go to cell to cell when an inmate may complain to see medical or is experiencing symptoms from the symptoms is a huge violation on behalf of the facility, and also a safety hazard, i needed emergency medical assistance and had to bang on the cell door for facility, and because staff wasn't on the unit at the time of me needing help, and the button wasn't working, when the staff showed back up to the unit 15 minutes later i was told the medical staff had left the building already, and i just had to deal with the problem at 7.am the next day

I suffer from hypertension,hyperlidemia,smoking,pre diabetes and E.D(Emotional Disturbed) according to the CDC guidelines those factors stated put me at an extremly

TRULINCS  87562054 - HOUGH, ESAAHN - Unit: BRO-I-B

---

FROM: 87562054
TO: AW Programs
SUBJECT: ***Request to Staff*** HOUGH, ESAAHN, Reg# 87562054, BRO-I-B
DATE: 02/26/2021 07:42:54 PM

To: WARDEN) H.TELLEZ
Inmate Work Assignment: CONTINUATION

high risk of death and or/ serious complications if i was to contract the deadly covid-19 virus, and it also constitutes extraordinary and compelling reason warranting a partial decension in my sentence. US v. Garcia F.supp. 3D,NO 11-cr 989 (JSR) ,2020 u.s dist Lexis 230236,2020 WL 7212962 (S.D.N.Y) Dec,8,2020

Us v. Brooker 976 F.3D 228,237(2nd cir.2020) the statue (3553 (a) permits a court to reduce but not eliminate a defendants prison sentence.

courts have also recognized that individuals in confined settings may be at a heightened risk of contracting Covid-19) Us.v Dqnte stephens No,15 cr.95,2020 U.S dist lexis 47846 .2020 WL 1295155 at 2* (S.D.N.Y mar 19 2020)

i am not getting the proper medical attention i deserve for my medical issues and that also heightens my risk of complications if i were to contact the deadly virus.

at a minium pre-trial detainees must be provided with 2 hours of indoor recreation (https) www.BOP.gov/policy/progstat/7331_004PDF)

i have complained to medical about .constant headaches,chest pains,shortness of breath, etcccc,and nothing has been done to hgelp me with these issues.

lockdowns and solitary confinement can be harmful to peoples mental health,they can be particulary dangerous for people with psychological disabilities or history of trauma,the added anxiety created by the pandemic and risk of serious health consequences from Covid-19 infection could exacerbate this impact further.

the B.o.p has already demonstrated negligence and disinterest in the mental and social health of inmates,which could trigger traumatic injuries (this being contray to USC art 3553) which ia unacceptable ,because the given duty of the B.O.P is to ensure adequate protection of prisoners as long as they remail in their custody and protection in light of law(18 usc 40.;42 [a,2,3,]

many district courts have considered the conditions of inmates to be severe and inhumane .especially in pre-trial detainees awaiting sentence.In such case as (U.S v. Mendola 03 cr (449) Honorable Judge Kimba Wood took into consideration in Mendola's severe seclusion in the MCC Faccility. also see Us. V mateo 229 supp,2nd 201,212. (S.D.N.Y.) 2004 see also US v Hernandez Santiago 92 F3d 97 101 n2 2D.

TRULINCS 87562054 - HOUGH, ESAAHN - Unit: BRO-I-B

---

FROM: 87562054
TO: AW Programs
SUBJECT: ***Request to Staff*** HOUGH, ESAAHN, Reg# 87562054, BRO-I-B
DATE: 02/26/2021 08:02:01 PM

To: WARDEN) H.TELLEZ
Inmate Work Assignment: CONTINUATION

Honorable Judge; Jesse M Furman granting Mr.Ozols credit at sentencing ,"stating the conditions on which i have read are the conditions that one associates with a third world country,Not a country like this and no detainee wheather convicted or not ,pending sentence should have endured as the detainees at MDC have endured "quoting Ozols V Us 16 cr.692 (JMF) ECF No 234 En 30-20 31;14 ...

1) constant lockdowns 21+ hours daily
2) no access to sunlight /no Fresh air, recirculated air,
3) limited access to medical treatment/dental
4) limited access to law libraries
5) limited recreational activities
6) living with maximum security inmates either sentenced to life or death penalty
7) overcrowding
8) inadequate portions of food
9) violent conditions
10) limited privacy in showers and toilets

for all the reason stated above i ask that a 2for1 day credit for harsh conditions be imposed/ granted ..

respectfully submitted by
_____  Esaahn Hough..